UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ALBERT DILL, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | No. 1:15-cv-01845-JMS-MJD |
| ) | |
| CAROLYN W. COLVIN Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Plaintiff Albert Dill, Jr., applied for disability benefits under the Social Security Act on December 21, 2012, [Filing No. 13-5 at 2], and later amended his disability onset date to be January 7, 2011, [Filing No. 13-5 at 17]. His claim was denied initially and on reconsideration, and a hearing was held before Administrative Law Judge Belinda Brown on July 11, 2014. [Filing No. 13-2 at 39-71.] On July 24, 2014, the ALJ issued an opinion concluding that Mr. Dill was not disabled as defined by the Social Security Act. [Filing No. 13-2 at 21-33.] The Appeals Council denied his request for review on October 23, 2015, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 13-2 at 2-4.] Mr. Dill filed this civil action pursuant to 42 U.S.C. § 405(g) on November 20, 2015, asking this Court to review his denial of benefits. [Filing No. 1.]

**I.**
**STANDARD OF REVIEW**

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212, 214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind

of inability, namely, an inability to engage in any substantial gainful activity.  Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability.  The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted).  For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).  Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The ALJ must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [his] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original).  "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled.  If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four.  Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id.* The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### RELEVANT BACKGROUND[1]

Mr. Dill was fifty-one years old at the time he filed his disability application. [Filing No. 13-5 at 2.] Mr. Dill graduated from high school and took special education classes. [Filing No. 13-2 at 43-11; Filing No. 13-8 at 90.] He spent most of his career working as a "porter" for one employer, where he floated between assigned tasks, such as mopping floors, cleaning the

---

[1] Both parties provided a detailed description of Mr. Dill's medical history and treatment in their briefs. [Filing No. 15 at 2-4; Filing No. 20 at 3-6.] Because those descriptions implicate sensitive and otherwise confidential medical information about Mr. Dill, the Court will simply incorporate those facts by reference and only detail specific facts as necessary to address the parties' arguments.

3

storeroom, cleaning the docks, putting up stock in the kitchen, and cleaning pots and pans. [Filing No. 13-2 at 44-45.]

Using the five-step sequential evaluation set forth by the Social Security Administration in 20 C.F.R. § 404.1520(a)(4), the ALJ ultimately concluded that Mr. Dill is not disabled. [Filing No. 13-2 at 32-33.] The ALJ found as follows:

- At Step One of the analysis, the ALJ found that Mr. Dill meets the insured status requirements of the Social Security Act through December 31, 2013, and has not engaged in substantial gainful activity[2] since his alleged onset date of January 7, 2011. [Filing No. 13-2 at 23.]

- At Step Two of the analysis, the ALJ found that Mr. Dill has the following severe impairments: obesity and organic mental disorder. [Filing No. 13-2 at 23.]

- At Step Three of the analysis, the ALJ found that Mr. Dill does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [Filing No. 13-2 at 24.] The ALJ considered various listings, but ultimately found that Mr. Dill did not meet any of them. [Filing No. 13-2 at 24-26.]

- The ALJ found that Mr. Dill has the residual functional capacity ("RFC") to do as follows:

    perform medium work . . . except occasional climbing ramps and stairs, kneeling, crouching and crawling; never climbing ladders or ropes or balancing; limited to simple routine tasks and decisions.

    [Filing No. 13-2 at 26.]

---

[2] Substantial gainful activity is defined as work activity that is both substantial (i.e. involves significant physical or mental activities) and gainful (i.e. work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a).

4

- At Step Four of the analysis, the ALJ concluded that Mr. Dill was capable of performing his past relevant work as a food service worker. [Filing No. 13-2 at 31.] The ALJ specifically found that the work did not require the performance of work-related activities precluded by Mr. Dill's RFC as actually and generally performed. [Filing No. 13-2 at 31.]

- Alternatively, the ALJ progressed to Step Five and found that there are other jobs existing in the national economy that Mr. Dill is able to perform, including sales attendant, houseman, and cashier II. [Filing No. 13-2 at 31-32.]

- Based on these findings, the ALJ concluded that Mr. Dill is not disabled as defined by the Social Security Act and, thus, is not entitled to the requested disability benefits. [Filing No. 13-2 at 32.]

Mr. Dill requested that the Appeals Council review the ALJ's decision, but that request was denied on October 23, 2015, making the ALJ's decision the Commissioner's final decision subject to judicial review. [Filing No. 13-2 at 2-4.] Mr. Dill filed this civil action pursuant to 42 U.S.C. § 405(g), asking this Court to review his denial of benefits. [Filing No. 1.]

### III.
#### DISCUSSION

Mr. Dill presents multiple issues on appeal that he contends require this Court to reverse the decision of the ALJ denying his request for disability benefits. [Filing No. 15.] He contends that the ALJ erred by concluding that Mr. Dill did not meet Listing 12.05C. [Filing No. 15 at 7-15.] He also claims that the ALJ erred by erroneously evaluating opinions by consultative examiner Dr. Jared Outcalt regarding Mr. Dill's difficulty handling routine changes at work and restricting him to simple instructions. [Filing No. 15 at 15-18.] Mr. Dill argues that the RFC the ALJ assigned him did not reflect the ALJ's finding that Mr. Dill has moderate difficulties

maintaining concentration, persistence, and pace. [Filing No. 15 at 18-21.] He also disputes the ALJ's conclusion that he has a high school education and contends that the ALJ made multiple errors in determining that Mr. Dill could perform his past relevant work. [Filing No. 15 at 21-24.] After evaluating the parties' arguments, the record, and the applicable caselaw, the Court finds two clear bases for reversing the ALJ's decision denying disability benefits to Mr. Dill. Thus, the Court will begin with those issues.

### A. Limitations in Concentration, Persistence, and Pace

Mr. Dill argues that the ALJ failed to adequately account for his recognized moderate limitations in concentration, persistence, and pace, in violation of established precedent. [Filing No. 15 at 18-21.] He contends that neither the ALJ's assigned RFC nor the hypothetical questions posed to the vocational expert sufficiently account for these limitations because they only limited him to simple, routine tasks. [Filing No. 15 at 18-21.]

The Commissioner briefly addresses this issue in response, arguing that Mr. Dill "failed to show that the record supported any additional limits related to concentration or pace problems that were not already accommodated by the ALJ's residual functional capacity restrictions." [Filing No. 20 at 19.]

In reply, Mr. Dill claims that the Commissioner "missed the point" of the binding precedent. [Filing No. 21 at 15-16.] Mr. Dill emphasizes that the ALJ found that he had moderate limitations in concentration, persistence, and pace and that his argument focuses on the ALJ's failure to adequately account for those recognized limitations in the RFC and hypothetical questions to the vocational expert. [Filing No. 21 at 15-16.]

The ALJ's RFC assessment and the hypothetical questions posed to the vocational expert "must incorporate all of the claimant's limitations supported by the medical record." *Varga v.*

6

*Colvin*, 794 F.3d 809, 813 (7th Cir. 2015). Among the mental limitations that must be considered are deficiencies in concentration, persistence, or pace. *Id.* The Seventh Circuit has repeatedly held that restricting a claimant who has limitations of concentration, persistence, and pace to "simple, routine tasks" "d[oes] not adequately account for the plaintiff's medical limitations, including an impairment in concentration." *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009); *see also Varga*, 794 F.3d at 814-15 (noting that the Seventh Circuit has "repeatedly rejected the notion that . . . confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace"); *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618-19 (7th Cir. 2010) (limiting claimant to "routine, repetitive tasks with simple instructions" did not account for "moderate limitation in concentration, persistence and pace").[3]

The ALJ specifically found that Mr. Dill had moderate limitations in concentration, persistence, or pace. [Filing No. 13-2 at 25 ("With regard to concentration, persistence or pace, the claimant has moderate difficulties.").] The ALJ assigned Mr. Dill an RFC that limited him to "simple routine tasks and decisions" in an apparent attempt to account for his moderate limitations in concentration, persistence, or pace. [Filing No. 13-2 at 26.] Additionally, the ALJ's proposed hypotheticals to the vocational expert, in relevant part, limited Mr. Dill to "simple, routine tasks, simple, work-related decisions." [Filing No. 13-2 at 65-66.] Contrary to well-established Seventh Circuit precedent, however, such limitations are insufficient to account for moderate limitations in concentration, persistence, or pace. *See, e.g., O'Connor-Spinner*, 627 F.3d at 618-19. The Court agrees with Mr. Dill that this was not harmless error because the ALJ relied on the resulting flawed

---

[3] *O'Conner-Spinner* sets forth exceptions to this general rule, but the Commissioner does not argue that an exception applies. [Filing No. 20 at 18-19.] Thus, the Court will not consider the exceptions.

testimony by the vocational expert to support his conclusions at Steps Four and Five. [Filing No. 15 at 18-21 (citing Filing No. 13-2 at 65-67).] The Court also agrees with Mr. Dill that the Commissioner's response misses the point because Mr. Dill is not requesting restrictions beyond what the ALJ found. [Filing No. 20 at 19; Filing No. 21 at 16-15.] Instead, Mr. Dill argues that the ALJ erred by failing to sufficiently account for the moderate limitations in concentration, persistence, or pace that the ALJ found Mr. Dill had. The Court agrees, and the ALJ's decision must be reversed.

### B. Listing 12.05 (Intellectual Disability)

Mr. Dill argues that the ALJ erred by finding that Mr. Dill did not meet Listing 12.05C. [Filing No. 15 at 7-15.] Mr. Dill contends that the ALJ erroneously found that there was no evidence in the record supporting an onset of his intellectual disability before age 22. [Filing No. 15 at 13.] Specifically, Mr. Dill points to the undisputed evidence in the record that he began special education classes in the second grade.[4] [Filing No. 15 at 13.]

The Commissioner argues in response that substantial evidence supports the ALJ's decision that Mr. Dill did not meet or medically equal the criteria of Listing 12.05C. [Filing No. 20 at 8-13.] In relevant part, the Commissioner admits that Mr. Dill graduated from high school

---

[4] Mr. Dill sets forth all of the elements of Listing 12.05C in his opening brief and argues that the record evidence supports him meeting or medically equaling each of the elements. [Filing No. 15 at 7-15.] In her response brief, the Commissioner contends that Mr. Dill does not meet various elements of Listing 12.05C. [Filing No. 20 at 8-13.] The ALJ's decision, however, only addressed one of the elements of Listing 12.05C—whether there is record evidence establishing an onset date of the intellectual disability before age 22—and she found that Mr. Dill did not meet that element. [Filing No. 13-2 at 25-26.] The Court will list all of the elements while detailing the applicable law to put Listing 12.05C in context, but it will not address the parties' arguments regarding whether the record evidence supports the elements of Listing 12.05C that the ALJ did not discuss because doing so would violate the *Chenery* doctrine. *See Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010) (emphasizing that it violates the *Chenery* doctrine for the Commissioner to defend the ALJ's decision on grounds that the ALJ has not embraced) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)).

and was "in a special education program" but argues that "the record did not corroborate any supportive services while in school, and the record contained no IQ scores from his school period." [Filing No. 20 at 9.]

In reply, Mr. Dill emphasizes that Listing 12.05 does not require intelligence testing before age 18. [Filing No. 21 at 8.] In fact, Mr. Dill contends that the "[t]here is *no* requirement for pre-age-twenty-two evidence" at all. [Filing No. 21 at 11 (original emphasis).]

A listing "describes impairments that are considered presumptively disabling when a claimant's impairments meet the specific criteria described in the Listing." *Maggard v. Apfel*, 167 F.3d 376, 379 (7th Cir. 1999) (citing 20 C.F.R. § 404.1525(a)). The Code of Federal Regulations provides that the Social Security Administration "will find that [a claimant's] impairment(s) meets the requirements of a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement...." 20 C.F.R. § 416.925(c)(3). Listing 12.05 contains an initial paragraph that lays out the diagnostic description of intellectual disability plus four separate criteria (paragraphs A through D). *See* 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00. In order to meet Listing 12.05, a claimant must have an impairment that meets one of the four requirements of that Listing. *See Adkins v. Astrue*, 226 Fed. Appx. 600, 605 (7th Cir. 2007) (citing 20 C.F.R. Part 404, Subpt. P, App. 1, § 12.05); *Maggard*, 167 F.3d at 380.

The Seventh Circuit Court of Appeals has summarized the requirements for a finding of intellectual disability under Listing 12.05C as follows: "(1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning initially manifested during the developmental period before age 22; (3) a valid verbal, performance, or full scale IQ of sixty through seventy; and (4) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Adkins*, 226 Fed. Appx. at 605 (citations omitted);

*see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1 at § 12.00(A) ("Listing 12.05 contains an introductory paragraph with the diagnostic description for intellectual disability. It also contains four sets of criteria (paragraphs A through D). If your impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, we will find that your impairment meets the listing."). The Seventh Circuit has also noted that "[o]rdinarily a person with an IQ under 70 and at least one additional impairment that imposes a limitation on ability to work…is automatically deemed to be disabled." *Browning v. Colvin*, 766 F.3d 702, 704 (7th Cir. 2014). The term "deficits in adaptive functioning," the second of the four requirements, "denotes inability to cope with the challenges of ordinary everyday life." *Novy v. Astrue*, 497 F.3d 708, 710 (7th Cir. 2007) (citing American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders, Text Revision (DSMIV–TR)* 42 (4th ed. 2000)).

With regard to the requirement that the evidence must support onset of the impairment before age 22, a rule adopted by the Social Security Administration about evaluating mental impairments provides that the proper interpretation is "to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period." "Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury," 65 FR 50746-01, 2000 WL 1173632. It specifically states that "intelligence testing (or other contemporary evidence) prior to age 18" is not required. *Id.* Instead, evidence that a claimant was in special education classes at a young age may support a finding that his impairment manifested itself prior to age 22. *See, e.g.*, *Bixler v. Astrue*, 734 F. Supp. 2d 601, 605-06 (S.D. Ind. 2010); *see also McKinney v. Astrue*, 2013 WL 1137485, at *5 (S.D. Ind. 2013) (remanding for ALJ to evaluate

evidence of special education services in the record or more fully develop the record on that point for purposes of determining whether claimant met Listing 12.05).

The ALJ in Mr. Dill's case concluded that he did not meet or medically equal Listing 12.05C because although Mr. Dill had a full-scale IQ of 63, there "is no indication" that he has "deficits in adaptive functioning initially manifested during the developmental period, before age 22." [Filing No. 13-2 at 25-26.] Specifically, the ALJ noted that "[t]here is no indication he received any supportive services while in school and there are no IQ scores from his school period. He graduated from high school and did indicate he was in special education." [Filing No. 13-2 at 25-26.]

The record shows that Mr. Dill began receiving special education services in the second grade. [Filing No. 13-8 at 90.] Although the ALJ's opinion acknowledges that Mr. Dill "was in special education" before graduating from high school, she concludes in the same paragraph that Mr. Dill does not meet Listing 12.05 because "[t]here is no indication he received any supportive services while in school." [Filing No. 13-2 at 25-26.] These statements are irreconcilable because special education services can be the type of supportive services necessary to establish that the intellectual disability manifested itself prior to age 22. *See Bixler*, 734 F. Supp. 2d at 605-06; *McKinney*, 2013 WL 1137485, at *5. Thus, the Court concludes that the ALJ failed to build a logical bridge from the evidence in the record that Mr. Dill was in special education classes to her conclusion that there was no evidence in the record that Mr. Dill's intellectual disability had an onset before age 22.

Additionally, the ALJ erroneously relied on the fact that the record did not contain an IQ score from before Mr. Dill turned 18. [Filing No. 13-2 at 26.] As Mr. Dill pointed out in his opening brief, the Social Security Administration's rules state that Listing 12.05 does not require

11

evidence of "intelligence testing" prior to the age of 18.[5] 65 FR 50746-01, 2000 WL 1173632. Thus, the ALJ should not have relied on the lack of IQ testing before age 18 in determining that Mr. Dill did not meet or medically equal Listing 12.05.

In light of these errors, the Court must reverse the decision by the ALJ that Mr. Dill did not meet or medically equal Listing 12.05. To the extent that Mr. Dill argues that "[t]here is *no* requirement for pre-age-twenty-two evidence" to satisfy Listing 12.05, [Filing No. 21 at 11 (original emphasis)], the Court rejects that position. While a claimant need not present evidence of IQ testing prior to the age of 18, there still must be evidence in the record to establish that the claimant's deficits in adaptive functioning manifested prior to age 22. *See Adkins*, 226 Fed. Appx. at 605 (setting forth the elements of Listing 12.05C, including that "deficits in adaptive functioning initially manifested during the developmental period before age 22"); *see also* 65 FR 50746-01, 2000 WL 1173632 (noting that the word "manifested" has always been interpreted "to include the common clinical practice of inferring a diagnosis of mental retardation when the longitudinal history and evidence of current functioning demonstrate that the impairment existed before the end of the developmental period"). On remand, the ALJ should consider evidence of Mr. Dill's special education services and any other support services he received before age 22 when addressing whether Mr. Dill meets or medically equals Listing 12.05C.

### C. Other Issues

Because the Court has already detailed two bases on which the ALJ's decision regarding Mr. Dill's application for disability benefits must be reversed, the Court will summarily address Mr. Dill's remaining arguments.

---

[5] Although Mr. Dill pointed to this in his opening brief, [Filing No. 15 at 9], the Commissioner ignored it in her response brief and instead relied on the ALJ's conclusion that "the record contained no IQ scores from his school period" to support the decision, [Filing No. 20 at 9].

Mr. Dill claims that the ALJ erred by concluding that he has a high school education because although he obtained that degree, he took special education classes to do so. [Filing No. 15 at 21-22.] As Mr. Dill points out in his reply brief, the Commissioner did not respond to this argument. [Filing No. 21 at 5-6.] The applicable regulations provide that "high school education" means that the claimant has "abilities in reasoning, arithmetic, and language skills acquired through formal schooling at a 12th grade level or above." 20 C.F.R. § 404.1564. The Court has already ordered the ALJ on remand to more fully consider the type of special education and other support services that Mr. Dill received in the context of considering Listing 12.05C. In doing so, the ALJ should also be mindful that although Mr. Dill received a high school diploma, he may or may not have the abilities set forth in 20 C.F.R. § 404.1564 to have a "high school education."

Mr. Dill also contends that the ALJ erred by implicitly rejecting various conclusions of consultative examiner Dr. Outcalt, who concluded that Mr. Dill's "overall intellectual ability falls in the Extremely Low range" and diagnosed him with mild mental retardation. [Filing No. 13-8 at 91-94.] On remand, the ALJ should take care to fully evaluate Dr. Outcalt's opinion, particularly regarding Mr. Dill's reported difficulties handling routine changes at work and restricting him to simple instructions, which Mr. Dill contends the ALJ "implicitly rejected." [Filing No. 15 at 15-18.]

Finally, Mr. Dill argues that the ALJ made multiple errors in determining that he could perform his past relevant work. [Filing No. 15 at 22-24.] Because the ALJ's Step Four conclusion rested on other mistakes made by the ALJ—including mistakes related to crafting his RFC and posing hypothetical questions to the vocational expert—the ALJ's Step Four conclusion is also inherently flawed. Additionally, as Mr. Dill points out, the ALJ found that Mr. Dill could perform "medium work," which "requires standing or walking, off and on, for a total of approximately 6

13

hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds." [Filing No. 15 at 23 (citing SSR 83-10).] Mr. Dill's past relevant work as actually performed, however, required him to stand or walk the entire day. [Filing No. 15 at 23; Filing No. 13-6 at 9.] If the ALJ reaches Step Four, she should take care to determine that Mr. Dill can perform his past relevant work as actually performed before making such a finding.

## IV.
### CONCLUSION

For the reasons detailed herein, the Court **VACATES** the ALJ's decision denying Mr. Dill benefits and **REMANDS** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence four). Final judgment will issue accordingly.

Date: 8/5/2016

*[signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Electronic Distribution via CM/ECF:**

J. Frank Hanley, II
jfrankhanley@jfrankhanley.com

Kathryn E. Olivier
UNITED STATES ATTORNEY'S OFFICE
kathryn.olivier@usdoj.gov